UNITED STATES DISTRICT COURTcomplaint
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| DIANA PEREZ<br>　　　　Plaintiff,<br><br>　　　　v.<br><br>THE TOWN OF NORTH PROVIDENCE,<br>and CHARLES LOMBARDI, individually<br>and in his official capacity as Director of<br>Public Safety, for the Town of Providence.<br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 16-664-M-PAS |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

Plaintiff Diana Perez, a lieutenant in the North Providence Police Department ("NPPD"), has sued the Town of North Providence and Charles Lombardi, the Mayor and Public Safety Director (collectively "the Town"), alleging a hostile work environment, in violation of 42 U.S.C. § 2000e-2(a)(1), and retaliation, in violation of 42 U.S.C. § 2000e-3(a). ECF No. 1 at ¶¶ 1, 88–93. The Town moves to dismiss Lt. Perez's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 8. Because the Court finds that Lt. Perez has set forth sufficient plausible allegations to establish legal claims for a hostile work environment resulting in gender discrimination and retaliation by the Town, the Town's Motion to Dismiss is DENIED.

# BACKGROUND[1]

Lt. Perez has been employed by the NPPD since March of 2004. ECF No. 14-2 at ¶ 8. As a lieutenant, she is the highest-ranking female police officer ever employed by the Town of North Providence. *Id.* at ¶ 9.

Beginning in 2012, Lt. Perez began to experience a series of gender-based comments and actions directed towards her and other females. *Id.* at ¶ 14. She delineates this—a series of "inappropriate, discriminatory and vulgar comments made by supervising officers," *id.* at ¶ 12—in her Amended Complaint. After she complained of these discriminatory acts, she suffered a series of retaliatory acts. The litany of gender-based, demeaning, and sexist comments and actions, as well as the retaliation for complaining of the sexual harassment, as alleged by Lt. Perez is set forth below.

From 2012 to 2014, the Director of the Rhode Island Municipal Academy chose Lt. Perez to teach classes at the Academy. *Id.* at ¶ 14. In response, NPPD Acting Chief Christopher Pelagio, Lt. Perez's supervisor, falsely claimed that she obtained the position because the Director wanted a sexual relationship with her. *Id.* Similarly, Chief Pelagio taunted Lt. Perez, declaring that a bail commissioner quickly returned her calls because he wanted Lt. Perez in a sexual manner. *Id.* at ¶¶ 17–19.

Chief Pelagio was not the only member of the NPPD to engage in crude behavior. A captain in the NPPD sent Lt. Perez a text message that referenced male

---

[1] The facts are set forth as pled by Lt Diana Perez because, at the motion to dismiss stage, the Court "accept[s] as true all well-pleaded facts." *SEC v. Tambone*, 597 F.3d 436, 441 (1st Cir. 2010).

genitalia. *Id.* at ¶ 26. And at another point in time, Lt. Perez, while in a meeting with a male lieutenant, excused herself to use the restroom. In response, the lieutenant, retorted, "[M]ake sure you wipe from front to back." *Id.* at ¶ 33.

In addition to the comments directed towards Lt. Perez, Chief Pelagio and Acting Deputy Chief Charles Davey, along with other members of the NPPD, made gender-based comments directed towards other women. For instance, Chief Pelagio frequently referred to a female dispatcher as a "penguin" because of the dispatcher's weight, *id.* at ¶¶ 22, 24, and Deputy Chief Davey referred to the same dispatcher as a "walrus," *id.* at ¶¶ 23, 25. On one occasion, Chief Pelagio referred to a female animal control officer as a "cunt," *id.* at ¶ 27, and on another occasion, he referred to a female member of the North Providence Town Council as a "cunt," *id.* at ¶ 28.

Chief Pelagio was not the only NPPD member to employ the boorish parts of our lexicon. Supervisors in the NPPD—in the presence of Lt. Perez—routinely characterized a female dispatcher as a "slut bitch, and whore." *Id.* at ¶ 32. The supervisor of a female detective in the NPPD criticized the detective's weight in the presence of Lt. Perez. *Id.* at ¶ 30. Also in Lt. Perez's presence, supervising officers commented that a female sergeant in the NPPD should not be a police officer because she has "family responsibilities." *Id.* at ¶ 31.

In February of 2016, Lt. Perez, Chief Pelagio, Deputy Chief Davey, and a lieutenant interviewed a female recruit for the NPPD. *Id.* at ¶ 34. Lt. Perez voiced legitimate criticism concerning the recruit, and in response, Chief Pelagio quipped, "Tell me the truth, you don't want any competition, do you?" *Id.* at ¶ 35. Shortly

after, Deputy Chief Davey and the lieutenant began joking about the attractiveness of the female recruit. *Id.* at ¶ 36. Later that day, Chief Pelagio and another lieutenant continued to comment on the attractiveness of the female recruit, and the lieutenant, while "holding his hands in a manner to suggest sexual intercourse," remarked that "the candidate could 'sit on . . . [the lieutenant's] lap' during the interview." *Id.* at ¶ 38 (alteration in original). Additionally, during these lewd conversations, Chief Pelagio referred to Lt. Perez's body "by drawing with his hands an hourglass-shaped outline." *Id.* at ¶ 39.

The following month, Chief Pelagio "made an unsolicited, rude, and abusive comment" to Lt. Perez in the presence Deputy Chief Davey. *Id.* at ¶ 42. Deputy Chief Davey, in response, interjected, "Time out. I don't want to be a witness." *Id.* at ¶ 44.

Because of her regular exposure to sexist behavior and remarks in her work place, Lt. Perez met with Mayor Lombardi and detailed her allegations against Chief Pelagio and Deputy Chief Davey. *Id.* at ¶¶ 48–49. Prior to that, Mayor Lombardi had learned of the "unsolicited, rude and abusive comment" made by Chief Pelagio and later pledged to take action. *Id.* at ¶¶ 46, 49. Nevertheless, despite this pledge of action, Mayor Lombardi has sat idle. *Id.* at ¶ 49. Instead, what followed was a bevy of retaliatory acts by the Town that Lt. Perez levied in her Amended Complaint.

Subsequent to Chief Pelagio hearing that Lt. Perez made a written complaint to Mayor Lombardi, Chief Pelagio informed Lt. Perez that he "no longer can trust her" and that she "is no longer part of his 'inner circle.'" *Id.* at ¶ 51. Also, in close

4

temporal proximity to Lt. Perez complaining of harassment, Deputy Chief Davey placed a toy rat in an unmarked police car. *Id.* at ¶ 52–55.

As a result of the harassment, Lt. Perez developed disabling high blood pressure, which forced her to take leave. *Id.* at ¶ 72. Lt. Perez has followed all of the NPPD's procedures and her physician concluded that the injury resulted from Lt. Perez's employment, yet the NPPD chose to contest the injury. *Id.* at ¶¶ 57–58. To add insult to injury, the NPPD placed Deputy Chief Davey, an alleged harasser, in charge of investigating her injury. *Id.* at ¶ 59. In addition, the NPPD cut off Lt. Perez's access to her email and refused to turn over a physician's examination report of Lt. Perez, in contravention to the collective bargaining agreement. *Id.* at ¶¶ 71, 76–77.

After Lt. Perez filed her original Complaint, Mayor Lombardi met with a captain in the NPPD and joked that they "should go into a business together, a 'wiping business.'" *Id.* at ¶ 91. Mayor Lombardi then went on a local radio show and criticized Lt. Perez for disclosing the allegations in a memorandum, implied that the allegations were untruthful, and suggested that Lt. Perez made the allegations at the labor union's behest. *Id.* at ¶¶ 95–96. Also, around this time, a lieutenant confronted Lt. Perez and called her a liar. *Id.* at ¶ 98.

## PROCEDURAL HISTORY

In response to Lt. Perez filing the original Complaint, the Town moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 8. The Town's Motion sets forth three grounds for dismissal: (1) the actions against Mayor Lombardi cannot be

maintained because Title VII does not impose individual liability upon employees; (2) Lt. Perez, as a matter of law, fails to set forth a hostile work environment claim; and (3) Lt. Perez's Complaint lacks sufficient factual allegations to support a claim for retaliation. *Id.* at 4–31.

Additionally, after the Town filed their Motion to Dismiss, Lt. Perez moved to amend her original Complaint, adding three allegations of retaliation that occurred after she filed the instant Complaint. ECF No. 14. The Town opposes the Motion to Amend. ECF No. 17. In opposing this Motion, it argues that Lt. Perez failed: (1) to exhaust her administrative remedies for the new allegations, (2) to comply with Rhode Island's notice-of-claims statute, and (3) to establish a plausible claim of retaliation. *Id.*

## LEGAL STANDARD

### I. Motion to Amend

A party may move to supplement her pleadings to include events that transpired after the pleadings were filed. Fed. R. Civ. P. 15(d). And a court may, "on just terms," permit this supplementation. *Id.*

> As written, Rule 15(d) contains no standards at all to guide the district court's analysis; it merely authorizes the district court to permit service of a supplemental pleading "on just terms." In an effort to fill this vacuum and in keeping with the overarching flexibility of Rule 15, courts customarily have treated requests to supplement under Rule 15(d) liberally.

*U.S. ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1, 7 (1st Cir. 2015). A court may deny a request for supplementation if the motion to supplement references "events [that] occurred before the filing of the original complaint" or "would 'unduly delay the

6

resolution of the case.'" *Id.* (first citing *Eid v. Alaska Airlines, Inc.,* 621 F.3d 858, 874–75 (9th Cir. 2010); and then quoting *Hall v. CIA,* 437 F.3d 94, 101 (D.C. Cir. 2006)). "In the last analysis, a district court faced with a Rule 15(d) motion must weigh the totality of the circumstances, just as it would under Rule 15(a)." *Id.*

## II. Motion to Dismiss

To survive a motion to dismiss, a plaintiff's complaint need not establish a prima facie case. *Medina-Velázquez v. Hernández-Gregorat,* 767 F.3d 103, 108 (1st Cir. 2014). However, the complaint must set forth a plausible claim for relief. *Flock v. United States Dep't of Transportation,* 840 F.3d 49, 54 (1st Cir. 2016). And "the elements of a prima facie case are relevant to the plausibility assessment, forming 'part of the background against which a plausibility determination should be made.'" *Medina-Velázquez,* 767 F.3d at 108 (quoting *Rodríguez–Reyes, v. Molina–Rodríguez,* 711 F.3d 49, 54 (1st Cir. 2013)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Coll. Hill Props., LLC v. City of Worcester,* 821 F.3d 193, 195–96 (1st Cir. 2016) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).

The plausibility determination is a two-step process. First, the Court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *Medina-Velázquez,* 767 F.3d at 108 (quoting *A.G. ex rel. Maddox v. v. Elsevier, Inc.,* 732 F.3d 77, 80 (1st Cir. 2013)). Second, the Court "must determine whether the remaining factual content

allows a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *A.G. ex rel. Maddox*, 732 F.3d at 80).

## DISCUSSION

### I. Motion to Amend

The Court begins with Lt. Perez's Motion to Amend/Correct Plaintiff's Complaint, wherein she sets forth three additional factual allegations that occurred after she filed her original Complaint. ECF Nos. 14 and 14-1. The Town objected to the proposed amended pleading, arguing that Lt. Perez has not exhausted her administrative remedies, complied with Rhode Island's notice-of-claims statute, or alleged a plausible claim of retaliation. ECF No. 17 at 4.

#### *A. Failure to Exhaust Administrative Remedies*

In challenging Lt. Perez's Motion to Amend, the Town argues that, because the new retaliatory acts occurred after she filed her charge with the Rhode Island Commission for Human Rights ("RICHR"), Lt. Perez did not exhaust her administrative remedies for those claims. ECF No. 17 at 5.

Title VII offers an avenue for employees to pursue discrimination claims against their employers. *Franceschi v. U.S. Dep't of Veterans Affairs*, 514 F.3d 81, 85 (1st Cir. 2008). But as a condition precedent to bringing a claim under Title VII, the claimant must first exhaust his or her administrative remedies. *Rodriguez v. United States*, 852 F.3d 67, 78 (1st Cir. 2017). The timely filing of an administrative charge with the EEOC kick starts the "Title VII administrative process." *Franceschi*,

514 F.3d at 85. And the receipt of a right-to-sue letter completes the exhaustion requirement. *Vázquez-Rivera v. Figueroa*, 759 F.3d 44, 48 (1st Cir. 2014).

The First Circuit does recognize, however, at least one exception to the exhaustion requirement:

> A claim of retaliation for filing an administrative charge with the EEOC is one of the narrow exceptions to the normal rule of exhaustion of administrative remedies. Such a claim may ordinarily be bootstrapped onto the other Title VII claim or claims arising out of the administrative charge and considered by the district court, even though it has not been put through the administrative process.

*Franceschi*, 514 F.3d at 86; *accord Clockedile v. N.H. Dep't of Corr.*, 245 F.3d 1, 6 (1st Cir. 2001) ("[R]etaliation claims are preserved so long as the retaliation is reasonably related to and grows out of the discrimination complained of to the agency—*e.g.,* the retaliation is for filing the agency complaint itself.").

The Town contends that this exception is inapplicable because the retaliatory acts were not in response to Lt. Perez filing the charge with the RICHR. ECF No. 17 at 7. Instead, the new retaliatory acts, as alleged by the Town, are in response to a report released by the Town of North Providence, after an outside review of Lt. Perez's allegations of sexual harassment. *Id.* This report, however, described the allegations in the charge that Lt. Perez filed, and Lt. Perez's Amended Complaint can be read properly to allege retaliation that resulted from the allegations made to the RICHR. For this reason, the Town's argument is not well taken.

### B. Failure to File a Claim with the North Providence City Council

The Town next claims that R.I. Gen. Laws § 45-15-5 requires Lt. Perez to present her claims before the North Providence Town Council before filing suit, which

she failed to do. ECF No. 17 at 8. To support this proposition—that a state notice-of-claims statute acts as a procedural bar for Title VII claims—the Town cites to *Ciprian v. City of Providence*, No. CA 12-651-ML, 2013 WL 1339264 (D.R.I. Apr. 1, 2013). *Ciprian* recognized, to quote the Town's brief, that "R.I. Gen. Laws § 45-15-5 applies equally to employment discrimination claims in which damages are sought." ECF No. 17 at 8. Furthermore, "Adherence to R.I. Gen. § 45-15-5's presentment requirement is 'a condition precedent to filing a suit.'" ECF No. 17 at 8 (quoting *Ciprian*, 2013 WL 1339264, at *6). What is conspicuously absent from the Town's brief is that the *Ciprian* excerpts applied to RICRA[2] claims—that is, state law claims. The *Ciprian* Court uttered no word on notice requirements for federal Title VII claims, save for the EEOC requirements.

Now, with that horse of a different color out of the way, the Court turns to the Supreme Court's decision in *Felder v. Casey*, 487 U.S. 131 (1988). In *Felder*, the Supreme Court rejected the proposition that Wisconsin's notice-of-claims statute applies to federal civil rights actions brought under 42 U.S.C. § 1983. *Id.* at 153. Of particular import to the present case, the Supreme Court wrote, "States . . . may no more condition the federal right to recover for violations of civil rights than bar that right altogether . . . ." *Felder*, 487 U.S. at 144. *Felder* makes good sense, and the Court finds the application of it to Title VII—another civil rights act statute, though not from the Reconstruction era—to be a logical extension.

---

[2] The Rhode Island Civil Rights Act. R.I. Gen. Laws § 42-112-1 et seq.

### C. Failure to Allege a Plausible Claim of Retaliation

Lastly, the Town claims that even if the Court permits Lt. Perez to amend her Complaint, she still does not make out a plausible claim of retaliation. ECF No. 17 at 10–15. The Court addresses this issue in Section IV below. *Cf. Brait Builders Corp. v. Mass., Div. of Capital Asset Mgmt.*, 644 F.3d 5, 9 (1st Cir. 2011) ("'An amended complaint, *once filed,* normally supersedes the antecedent complaint,' and causes the latter to 'no longer perform[ ] any function in the case.'" (alteration in original) (quoting *Connectu LLC v. Zuckerberg,* 522 F.3d 82, 91 (1st Cir. 2008)).

In light of the fact that the retaliatory acts occurred after Lt. Perez filed her original Complaint and that the acts resulted from her filing the administrative charge, the Court GRANTS Lt. Perez's Motion to Amend.

### II. Mayor Lombardi's Individual Liability

Lt. Perez named Mayor Lombardi as a defendant "both in his capacity as Mayor and as Public Safety Director and individually as he is a supervisor of the plaintiff who has the capacity to take tangible employment actions against the plaintiff, as provided in *Vance v. Ball State University*, ___U.S.___, 133 S. Ct. 2434 (2013)."[3] ECF No. 14-2 at ¶ 5. Mayor Lombardi argues that this Court must dismiss him as a defendant in his individual capacity because Title VII does not impose individual liability on employees. ECF No. 8 at 7. As correctly noted by Mayor Lombardi, the First Circuit, in *United State v. Fantini,* joined a consensus of sister

---

[3] Lt. Perez's citation to *Vance* is misplaced, as that case examined the circumstances for which an employer (not an individual) may be vicariously liable for an employee's harassment. *Vance v. Ball State University*, 133 S. Ct. 2434, 2443 (2013).

circuits and held that "there is no individual employee liability under Title VII." 557 F.3d 22, 31 (1st Cir. 2009).

Lt. Perez replies by changing horses midstream, asserting in her Sur-Reply that, while individual employees cannot be held liable under Title VII, Mayor Lombardi's position does not qualify him as an employee. ECF No. 12 at 2. In support, Lt. Perez cites Title VII's definition of employee, which excludes "any person elected to public office in any State or political subdivision of any State." 42 U.S.C. § 2000e(f). This syllogism—Title VII does not impose liability on employees, and Mayor Lombardi is not an employee; therefore, Mayor Lombardi can be held liable under Title VII—misses the mark. Title VII only imposes liability on employers, *see Fantini*, 557 F.3d at 31 ("[T]he linkage between the size of the employer and the amount of available relief clearly indicates a congressional intent to limit plaintiffs' remedies to suits against employers." (quoting *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 181 (4th Cir. 1998)), so Mayor Lombardi's lack of employee status is irrelevant. Because Mayor Lombardi, as an individual, is not Lt Perez's employer, Lt. Perez's suit against Mayor Lombardi in his individual capacity cannot be maintained.

Accordingly, the Court dismisses Mayor Lombardi as a defendant in his individual capacity.[4]

---

[4] Now that the Court has dismissed Mayor Lombardi from this suit in his individual capacity, from here on, "the Town" only refers to the Town of North Providence.

### III. Hostile Work Environment Claim

Turning to the claims themselves, the Town urges the Court to dismiss Lt. Perez's hostile work environment claim, arguing that Lt. Perez failed to plead sufficient facts to establish a plausible claim for relief. ECF No. 8 at 7. In constructing this argument, the Town forms several sub-arguments for why the continuing violation doctrine, which allows a claimant to introduce time-barred conduct if it relates to non-time-barred conduct, does not apply. *Id.* at 17–23.

#### A. *Continuing Violation Doctrine*

Lt. Perez filed a charge with the RICHR, which forms the basis for the instant action, on July 8, 2016, *see* ECF No. 8-1, and the RICHR issued Lt. Perez a right-to-sue letter on November 25, 2016, ECF No. 1 at 19. Only the comments concerning the female police recruit and the abusive comment made by Chief Pelagio fall within the 300-day filing period under Title VII. *See* 42 U.S.C. § 2000e-5(e)(1). Lt. Perez may, however, introduce conduct that occurred outside of the 300-day period— through the continuing violation doctrine—if the time-barred conduct relates to the non-time-barred conduct. *Ayala v. Shinseki*, 780 F.3d 52, 57 (1st Cir. 2015) (citing *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 130 (1st Cir. 2009)).

The Town contends that Lt. Perez cannot avail herself of the continuing violation doctrine because: (1) no violation occurred within the statute-of-limitations period that can serve as an anchor violation, (2) Lt. Perez failed to plead the doctrine, (3) she believed the acts to be discriminatory as early as 2014 but failed to take action, (4) the time-barred acts do not relate to the non-time-barred acts. ECF No. 8 at 8.

### 1. Anchoring Conduct

The Court begins by considering the non-time-barred conduct. Lt. Perez's Amended Complaint alleges that her supervisor, Chief Pelagio, made several gender-based comments about Lt. Perez within the statutory period. Most salient, while discussing the attractiveness of a female recruit, Chief Pelagio referred to Lt. Perez by drawing an hourglass outline with his hands, and in response to Lt. Perez's legitimate substantive criticism of the female recruit, said: "Tell me the truth, you don't want any competition, do you?" ECF No. 14-2 at ¶¶ 35, 39. In addition, during this exchange, another lieutenant commented that the recruit could sit on his lap during the interview. *Id.* at ¶ 38. On a separate occasion, Lt. Perez claims that Chief Pelagio made a "rude and abusive comment to [her] concerning her physical appearance." *Id.* at ¶ 42.

Accepting Lt. Perez's well-pled allegations as true—as this Court must—Lt. Perez has plausibly set forth acts that occurred within the statutory period that contribute towards her hostile work environment claim. Essentially, the Amended Complaint contains three acts within the statutory period. First, Chief Pelagio outlined an hourglass figure with his hands to indicate Lt. Perez's body shape. *Id.* at ¶ 39. That is, he began with Lt. Perez's bust, shaped his hands inwards to indicate her waist, and outward again to illustrate her hips. Such a depiction of those parts of a female body reveals that Chief Pelagio actions were indeed sexual in nature. Next, Chief Pelagio accused Lt. Perez of not wanting to compete with the female recruit. While the Town asserts that Chief Pelagio's comment revealed no more than

14

a statement about competition in the workplace, ECF No. 8 at 10, the Town's position overlooks the precise wording of the allegation, which characterizes the comment as "referring to the female candidate's attractiveness," ECF No. 14-2 at ¶ 35. Furthermore, the context of the comment does not support a benign reading of Chief Pelagio's comment because the context was, according to the Amended Complaint, discussions about the attractiveness of the potential recruit. *Id.* at ¶ 36. Lastly, another lieutenant commented that the female recruit could sit on his lap, *id.* at ¶ 38, and to this the Town does not offer an innocent explanation.

The Town also posits that these allegations do not equate to actionable sexual harassment. But even if that were true (and the Court is dubious of the Town's assertion), under the continuing violation doctrine, the anchoring conduct by itself does not need to establish a hostile work environment claim. For this reason, the Court will deal with the sufficiency of the allegations after assessing the application of the continuing violation doctrine.

The anchor-conduct requirement has been met.

### 2. Pleading Requirement

Now the Court moves onto the pleading requirement. Absent from Lt. Perez's Amended Complaint are the words "continuing violation doctrine," yet her briefing makes clear that she seeks to avail herself of this doctrine. To this end, the Town cries foul, claiming that Lt. Perez effectively waived any continuing violation theory because she did not specifically plead the doctrine. ECF No. 8 at 17–18. In support of this legal argument, the Town cites to *Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d

179 (1st Cir. 1989), for the proposition that a continuing violation theory must be spelled out precisely in a complaint. The Town's reliance on this case, however, is misplaced, as the continuing violation in that case concerned a separate theory of wrongdoing: a discriminatory system, rather than individualized acts. *Id.* at 183 ("[T]he complaint which [the plaintiff] filed in district court did not appear to challenge defendant's overall promotional system. Plaintiff's pleaded concern seemed to be with how *she* was treated."). Here, this is not the case. Regardless, the *Mack* Court concluded that the party pled the continuing violation theory sufficiently, *id.*, and the First Circuit has not required that a party plead the doctrine with exactitude.

While Lt. Perez's Amended Complaint does not use the phrase "continuing violation doctrine," it gives every indication that she intends to pursue that legal theory. For instance, her Amended Complaint has a section titled "History of inappropriate comments by male supervising officers with North Providence Police Department," and the Amended Complaint goes on to detail six years of gender-based comments. ECF No. 14-2 at ¶¶ 12–33. Furthermore, under Count 1, Lt. Perez contends that *"[t]he actions of the defendants as outlined above in paragraphs 1 through 79* are so severe and pervasive that the actions have created a work environment that the plaintiff, Lt. Diana Perez, reasonably considers . . . to be intimidating, hostile and abusive." *Id.* at ¶ 104 (emphasis added). Accordingly, the Court finds that Lt. Perez sufficiently pled the continuing violation doctrine.

### 3. Lt. Perez's Belief that the Acts were Discriminatory

The Town next asserts that Lt. Perez cannot employ the continuing violation doctrine because she admits in her Amended Complaint that she was aware that the acts were discriminatory when the acts occurred. ECF No. 8 at 19; ECF No. 10 at 11. In support, the Town quotes *Provencher v. CVS Pharmacy, Div. of Melville Corp.*: "[T]he continuing violation claim will fail if the plaintiff was or should have been aware that he was being unlawfully discriminated against while the earlier acts, now untimely, were taking place." 145 F.3d 5, 14 (1st Cir. 1998).

The First Circuit, however, later rejected this rule in *Marrero v. Goya of P.R., Inc.*, 304 F.3d 7, 18 (1st Cir. 2002). The defendant in *Marrero* argued that, under *Provencher*, the plaintiff had to bring her hostile work environment claim within 300 days from the date that the plaintiff became aware that her employer was discriminating against her. *Id.* at 17. In rejecting this line of argument, the *Marrero* court explained, "[T]he Supreme Court explicitly rejected the view—advanced by [the defendant] here—that 'the plaintiff may not base a suit on individual acts that occurred outside the statute of limitations unless it would have been unreasonable to expect the plaintiff to sue before the statute ran on such conduct.'" *Id.* at 18. With that, the Court must reject the Town's position and its reliance on bad law.

### 4. Failure to Exhaust Administrative Remedies

Lt. Perez filed an administrative charge with the RICHR, as required by title VII. ECF No. 8-1. And this petition contained the two allegations of discrimination that permeated into her hostile work environment claim—the sexual comments

surrounding the female recruit on February 8, 2016, and the comments about Lt. Perez's physical appearance on March 10, 2016. *Id.* at 2–3. Lt. Perez's administrative charge did not, however, contain the time-barred acts of discrimination depicted in her Amended Complaint. To this, the Town concludes that Lt. Perez failed to exhaust her administrative remedies for the time-barred acts. ECF No. 8 at 22.

"[A] Title VII civil action is 'constrained' by the allegations limned in the administrative charge; that is, 'the judicial complaint must bear some close relation to the allegations presented to the agency.'" *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 223 (1st Cir. 2012) (quoting *Jorge v. Rumsfeld*, 404 F.3d 556, 565 (1st Cir. 2005)). This test that the First Circuit employs—the scope of the investigation test—"permits a district court to look beyond the four corners of the underlying administrative charge to consider collateral and alternative bases or acts that would have been uncovered in a reasonable investigation." *Thornton v. United Parcel Serv., Inc.*, 587 F.3d 27, 32 (1st Cir. 2009).

Here, it is not the case that Lt. Perez presented an alternative theory of liability, apart from those contained in the administrative charge. Instead, the claims in the administrative charge mirrored those in the Amended Complaint, and the additional acts alleged are borne out of the hostile work environment claim. Therefore, the acts not contained within the administrative charge are within the scope of the investigation.

## *5. Relatedness of the Time-Barred and Non-Time-Barred Conduct*

Lastly, the Town challenges the relatedness of the time-barred and non-time-barred conduct. ECF No. 8 at 21. In order for the continuing violation doctrine to apply, the time-barred acts must relate to the anchoring conduct, as correctly pointed out by the Town. *Ayala v. Shinseki*, 780 F.3d 52, 57 (1st Cir. 2015).

Here, the Court can best classify the time-barred acts as a series of harassing comments motivated by gender. Specifically, women—Lt. Perez and others—were subjected to salacious comments from male supervisors and were criticized if they did not fit a gender mold. It might be helpful to breakdown the individual time-barred acts and highlight the close resemblance they bear.

On one occasion, Lt. Perez's supervisor claimed she obtained a position because the director wanted a sexual relationship with her. ECF No. 14-2 at ¶ 14. In addition, on multiple occasions, this same supervisor, Chief Pelagio, claimed that a bail commissioner returned Lt. Perez's calls quickly because he wanted a sexual relationship with her. *Id.* at ¶ 18. A different supervisor, a captain, sent Lt. Perez a text that referenced male genitalia. *Id.* at ¶ 26.

Multiple supervisors referred to an employee as a walrus and penguin due to the woman's weight, *id.* at ¶¶ 22–23, and another female employee was criticized for her weight, *id.* at ¶ 30. Multiple women were referred to as "cunts," *id.* at ¶¶ 27–28, and one woman was called a "slut, bitch, and whore," *id.* at ¶ 32. Coworkers criticized a female sergeant for being a police officer because she should be tending to her children. *Id.* at ¶ 31.

These allegations closely mirror the sexualized comments about the female recruit, the hourglass outline referring to Lt. Perez's body, and the berating of Lt. Perez after she voiced criticism of the female recruit. *Id.* at ¶¶ 36–39. In each instance, superiors criticized women for their appearance or for not living up to a docile, sexual image of a woman.

In sum, the Court declines the Town's invitation to excise the continuing violation doctrine.

### *B. Statement of a Claim*

With the threshold issues out of the way, the Court turns to Lt. Perez's statement of a claim. It is the Town's position that even if the continuing violation doctrine applies, Lt. Perez's hostile work environment claim fails the familiar plausibility test. ECF No. 8 at 23–27.

There are six elements to a hostile work environment for sex-based discrimination:

> (1) that she (or he) is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

*Xiaoyan Tang v. Citizens Bank, N.A.*, 821 F.3d 206, 215–16 (1st Cir. 2016) (quoting *O'Rourke v. City of Providence*, 235 F.3d 713, 728 (1st Cir. 2001)). The Town posits that the allegations neither equate to gender-based harassment nor are severe

enough to constitute a hostile work environment. ECF No. 8 at 9–15, 23–27; ECF No. 10 at 4–10.

In establishing a hostile work environment claim predicated upon gender-based harassment, a plaintiff is "not required to demonstrate that [a defendant's] act was motivated by sexual desire, but merely that the harassment was gender-specific." *Pérez-Cordero v. Wal-Mart P.R., Inc.*, 656 F.3d 19, 28 (1st Cir. 2011) (citation omitted). "Whether harassment is sufficiently severe or pervasive to alter the conditions of one's employment 'is not . . . a mathematically precise test' and it 'can be determined only by looking at all the circumstances.'" *Flood v. Bank of Am. Corp.*, 780 F.3d 1, 11 (1st Cir. 2015).

At this stage of the litigation, the Court concludes that, after "looking at all the circumstances," Lt. Perez has alleged sufficiently severe and pervasive acts of sexual harassment to create a hostile work environment.

Within the statutory period, Lt. Perez's supervisors joked about the attractiveness of a female recruit. Lt. Perez voiced legitimate criticism of the recruit, and in response, Chief Pelagio retorted, "Tell me the truth you don't want any competition, do you?" ECF No. 14-2 at ¶ 35. Another lieutenant, in the presence of Lt. Perez commented that the female recruit could sit on his lap during the interview. *Id.* at ¶ 38. In addition, while discussing attractiveness of the candidate, Chief Pelagio referenced Lt. Perez's body and drew an hourglass with his hands. *Id.* at ¶ 39.

In evaluating whether the allegations set forth a plausible claim, a court must consider the context in which the alleged harassment is made. *See Xiaoyan Tang*, 821 F.3d at 216 ("The context in which something is said may be just as important as what is said."). For instance, Chief Pelagio's remark—"[t]ell me the truth, you don't want any competition, do you," ECF No. 14-2 at ¶ 35—must be considered in light of the surrounding conversation on the attractiveness of the female recruit and accompanying sexual innuendos. In this context, one cannot give much credence to the Town's position that the comments were non-gender-based comments about job performance. ECF No. 8 at 10.

Given the application of the continuing violation doctrine, the Court also looks to the historical acts of gender-based harassment alleged by Lt. Perez. These comments include: Chief Pelagio claiming that Lt. Perez received an assignment because the Director wanted a sexual relationship with her, ECF No. 14-2 at ¶ 14; Chief Pelagio claiming that Lt. Perez received favorable treatment because a bail commissioner "wanted" her, *id.* at ¶¶ 18–21; a captain referencing male genitalia in a text to Lt. Perez, *id.* at ¶ 26; and a lieutenant telling Lt. Perez, "[M]ake sure you wipe from front to back," *id.* at ¶ 33. Additionally, the pleaded allegations include Chief Pelagio referring to women as "cunts," *id.* at ¶¶ 27–28, and supervisors referring to a dispatcher as a "slut, bitch and whore," *id.* at ¶ 32.

While some may argue that Lt. Perez should have "thick skin" (*see Suarez v. Pueblo Int'l Inc.*, 229 F.3d 49, 54 (1st Cir. 2000)), or that her allegations are nothing more than the "occasionally unpleasant . . . vicissitudes of the workplace" (*Noviello v.*

*City of Boston*, 398 F.3d 76, 92 (1st Cir. 2005)), others may think a workplace in which women are called cunts and bitches and seen as sexual objects is sufficiently severe to meet the legal requirements of a hostile work environment. *See Forrest v. Brinker Int'l Payroll Co.*, LP, 511 F.3d 225, 229 (1st Cir. 2007) ("A raft of case law, however, establishes that the use of sexually degrading, gender-specific epithets, such as 'slut,' 'cunt,' 'whore,' and 'bitch,' with which [a co-worker] barraged [the plaintiff] at work, has been consistently held to constitute harassment based upon sex.").

At this motion to dismiss juncture,[5] the Court is left with allegations that establish a plausible hostile work environment claim. "[L]ewd remarks" and "come-ons" are "often the stuff of hostile work environment claims." *Billings v. Town of Grafton*, 515 F.3d 39, 48 (1st Cir. 2008). In Lt. Perez's Amended Complaint, she limned six years of crude and shocking conduct by her supervisors in the NPPD, which when considered in the totality, plausibly altered the conditions of her employment.

Accordingly, as to the hostile work environment claim, the Court denies the Town's Motion to Dismiss for Failure to State a Claim.

---

[5] Most certainly, a jury of Lt. Perez's peers, not one male judge, should evaluate the allegations by Lt. Perez to determine, first if they are true, and second to apply those true facts to the law. Lt. Perez has a right under the Seventh Amendment to the United States Constitution to have a jury decide if she can prove that her "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *O'Rourke v. City of Providence*, 235 F.3d 713, 728 (1st Cir. 2001) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

## IV. Retaliation Claim

Lastly, the Town challenges whether Lt. Perez's pleadings set forth an actionable retaliation claim. ECF No. 8 at 27–31; ECF No. 12–14. In establishing a retaliation claim, a plaintiff must demonstrate that "(i) she undertook protected conduct, (ii) she suffered an adverse employment action, and (iii) the two were causally linked." *Xiaoyan Tang v. Citizens Bank, N.A.*, 821 F.3d 206, 219 (1st Cir. 2016) (quoting *Noviello v. City of Boston*, 398 F.3d 76, 88 (1st Cir. 2005)).

Before attacking the meat of Lt. Perez's retaliation claim, the Town begins by asserting that Lt. Perez failed to allege that the retaliators had knowledge that Lt. Perez undertook protected conduct. ECF No. 8 at 27–29; ECF No. 10 at 12. This characterization, however, is disingenuous because, woven into the Amended Complaint, Lt. Perez penned: "*Subsequent to hearing that the plaintiff had made a written complaint to Mayor Lombardi about defendant Pelagio's inappropriate comments about her physical appearance, Pelagio* has informed the plaintiff that he 'no longer can trust her' and that the plaintiff is no longer part of his 'inner circle.'" ECF No. 14-2 at ¶ 51 (emphasis added). Thus, Lt. Perez has sufficiently claimed knowledge on behalf of her alleged retaliators.

Now, let us consider the sufficiency of the retaliation pleading. In contrast to "petty slights or minor annoyances that often take place at work and that all employees experience," *Planadeball v. Wyndham Vacation Resorts, Inc.*, 793 F.3d 169, 176 (1st Cir. 2015) (quoting *Billings v. Town of Grafton*, 515 F.3d 39, 54 (1st Cir. 2008)), material adverse employment actions are ones that are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a

charge of discrimination," *id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)).

Lt. Perez puts forth six acts of retaliatory conduct in her original Complaint: (1) Chief Pelagio telling Lt. Perez that he "no longer can trust her" and that "she is no longer part of his 'inner circle,'" ECF No. 14-2 at ¶ 51; (2) Deputy Chief Davey placing a toy rat in a police cruiser, *id.* at ¶¶ 52–55; (3) the NPPD contesting her injury, *id.* at ¶¶ 56–58; (4) the NPPD placing Deputy Chief Davey in charge of investigating Lt. Perez's injury, *id.* at ¶ 59; (5) the NPPD turning off access to Lt. Perez's email account, *id.* at ¶ 71; and (6) the NPPD initially refusing to provide the results of a physician's exam, in contravention to the Collective Bargaining Agreement, *id.* at ¶¶ 75–77. Additionally, in Lt. Perez's Amended Complaint, she alleges three new instances of retaliation that occurred after the filing of her original Complaint: (1) Mayor Lombardi and a Captain joked that they should go into a "wiping business"; (2) on a local radio show, Mayor Lombardi criticized Lt. Perez for disclosing her allegations in a written memorandum, implying that the allegations are untruthful; and (3) an accused lieutenant confronted a sergeant and called Lt. Perez a liar. *Id.* at ¶¶ 91–98.

In challenging Lt. Perez's retaliation pleading, the Town gripes about each alleged retaliatory act, claiming that no singular act is retaliatory. ECF No. 8 at 27–31. Though, the Court must, of course, consider the allegations "cumulatively." *Rodríguez-Vives v. P.R. Firefighters Corps of P.R.*, 743 F.3d 278, 285 (1st Cir. 2014). Thus, the Court determines whether it is plausible that the allegations, cumulatively,

could dissuade a reasonable worker from coming forward and undertaking the protected conduct—i.e., filing the administrative charge.

Most striking, Chief Pelagio essentially told Lt. Perez that, because she filed the Amended Complaint, she would receive adverse treatment. ECF No. 14-2 at ¶ 51 (stating that Lt. Perez is "no longer part of his 'inner circle'"). Notwithstanding, the Town asserts that each individual act, like the toy rat, for example, cannot be retaliatory.[6] *Id.* at ¶¶ 52–55. To be sure, if this was a singular act, the Court might find itself in agreement with the Town. But again, the Court cannot individually evaluate the allegations. In this case, the cumulative allegations include: placing an alleged harasser in charge of investigating Lt. Perez's injury; refusing to turn over examination results, in violation of the CBA; going on a public radio show and criticizing Lt. Perez for making the claims; and calling Lt. Perez a liar in front of her NPPD counterparts. Against this mise-en-scène, the Court finds that the sum of the retaliatory acts is not of the petty variety, but instead may plausibly dissuade a reasonable NPPD employee from coming forward.

---

[6] The Town cites two cases that supposedly hold that, as a matter of law, placing a rat near a complainant cannot be retaliatory. ECF No. 8 at 30. Both cases were, however, at the summary judgment stage, and neither said that placing a rat in the workspace is not an adverse employment action. The court in *Campbell* merely stated that the plaintiff failed to put forth facts indicating that management was responsible for the rat. *Campbell v. Cummins, Inc.*, No. 4:03-CV-00149DFH-WGH, 2005 WL 775932, at *13 n.6 (S.D. Ind. Mar. 25, 2005). Lt. Perez, in contrast, alleges that Deputing Chief Davey placed the rat in the police cruiser. ECF No. 1 at ¶ 55. And the court in *Fasoli* found the causal element of a prima facie case lacking. *Fasoli v. City of Stamford*, 64 F. Supp. 3d 285, 308 n.29 (D. Conn. 2014).

The Court, therefore, finds that Lt. Perez sufficiently stated a claim of retaliation.

## CONCLUSION

Lt. Perez has set forth plausible facts that would establish that the Town subjected her to a hostile work environment due to consistent sexual harassment and that the Town retaliated against her when she complained about it. For the reasons stated herein, the Court GRANTS Lt. Perez's Motion to Amend (ECF No. 14), GRANTS Defendants' Motion to Dismiss as to Mayor Lombardi individually (ECF No. 8), and DENIES the remainder of the Defendants' Motion to Dismiss (ECF No. 8).

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Judge

Date: June 22, 2017